IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RICHARD L. COX,            )
                           )
         Plaintiff,        )
                           )
v.                         )   No. 09-1298-WEB
                           )
MICHAEL J. ASTRUE,         )
COMMISSIONER OF            )
SOCIAL SECURITY,           )
                           )
         Defendant.        )
_____)

**Memorandum and Order**

Plaintiff seeks review of the Commissioner's denial of his claim for supplemental security income (SSI) disability benefits. An Administrative Law Judge (ALJ) concluded after a hearing that plaintiff was not disabled under the Social Security Act because although plaintiff suffers from severe medical impairments, he retains a residual functional capacity that would allow him to perform various sedentary jobs. An agency Appeals Council subsequently denied plaintiff's petition for review, making the ALJ's decision a final ruling subject to judicial review under 42 U.S.C. § 1383(c)(3).

I. *Background & Standards*.

The process for evaluating disability claims is well-established:

> The Commissioner uses a five-step sequential process to evaluate a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920 (2007); *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir.2010) (*citing Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir.1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id*. (*quoting Lax*, 489 F.3d at 1084.)

> In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment, and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). *Williams*, 844 F.2d at 750-51. If claimant's impairment(s) does not meet or equal a listed impairment, the Commissioner assesses RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential process. *Id*.
>
> After assessing claimant's RFC, the Commissioner evaluates steps four and five-whether claimant can perform his past relevant work, and whether, when considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. *Wilson*, 602 F.3d at 1139 (*citing Lax*, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir.2006); accord, *Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir.2001); *Williams*, 844 F.2d at 751 n. 2. At step five, the burden shifts to the Commissioner to show jobs in the economy within Plaintiff's capacity. *Id.*; *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999).

*Fuller v. Astrue*, ___ F.Supp.2d ___, 2011 WL 209527 (D. Kan. 2011).

The ALJ's path through the five-step process in this case is succinctly summarized in plaintiff's brief: At Step One of the process, the ALJ concluded the Plaintiff has not engaged in significant gainful activity since May 14, 2007, the date of his SSI application. (Tr. 15). At Step Two of the process, the ALJ concluded the Plaintiff does suffer from some severe medical impairments. Specifically, the ALJ concluded Plaintiff suffers from "degenerative disc disease (DDD), lumbar spine; obesity; diabetes; history of kidney stones; possible early congestive heart failure; sleep apnea (using C-PAP machine); hemochrismatosis." (Tr. 15). At Step Three of the process, the ALJ concluded none of the Plaintiff's specific medical impairments met or equaled any of the particular listings contained in Social Security regulations which would automatically

2

warrant a finding of disabled. (Tr. 15-16). At Step Four of the process, the ALJ concluded Plaintiff retained a residual functional capacity (RFC) as follows:

> The claimant can lift and/or carry, and push and/or pull 10 pounds occasionally, 5 pounds frequently, and can stand and/or walk about 2 hours total in an 8 hour workday. He can sit 6 hours in an 8 hour workday, with normal breaks. He can never climb ladders, ropes and scaffolds. The claimant can occasionally climb ramps and stairs. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. He must avoid even moderate exposure to hazards such as machinery and heights.

(Tr. 16). The ALJ further concluded at this step that Plaintiff is not able, by virtue of this RFC, to perform any of his past relevant work. (Tr. 19). At Step 5 of the process, the ALJ concluded Plaintiff is able to make a vocational adjustment such that he can still perform other work as a "cutter-porter," "order clerk/food and beverage," "call-out operator," and "administrative support worker." (Tr. 19-20). *See* Doc. 17 at 5-6.

II. *Summary of Arguments*.

Plaintiff's arguments focus on the ALJ's determination of his RFC, which is an assessment of what plaintiff is still able to do despite the limitations caused by his impairments. 20 C.F.R. §416.945(a)(1). Plaintiff argues the ALJ's assessment does not satisfy the regulations because a proper RFC requires "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." Doc. 17 at 8 (*citing* Social Security Ruling 96-8p and 20 C.F.R. 416.945)). Plaintiff contends the ALJ decision fails to describe the evidence relied upon to determine the RFC. Plaintiff also contends the ALJ failed to give proper weight to his testimony about his functional capacity. Plaintiff seeks a reversal of the ALJ ruling and a remand for a new evidentiary hearing.

The Commissioner contends the ALJ properly decided not to fully credit plaintiff's subjective complaints because they were inconsistent with medical and other evidence in the record. As such, the Commissioner argues the credibility findings of the ALJ must be affirmed. Further, the Commissioner argues the ALJ is not required to list and cite specific evidence supporting each finding forming part of the RFC. Defendant contends the ALJ properly considered all of the evidence in the record, citing "to medical and nonmedical evidence, including that Plaintiff's impairments were controlled with treatment, the lack of objective medical evidence, his daily activities and work activity, his conservative treatment, and the inconsistencies in Plaintiff's statements." Doc. 22 at 14. The Commissioner argues the ALJ adequately explained how he arrived at the RFC, specifically addressing the effect of plaintiff's obesity, musculoskeletal problems, and his testimony about standing limitations. Although there are no specific RFC opinions in the record matching the ALJ's, the Commissioner argues the ALJ has a duty to formulate the RFC based on all the evidence. Finally, the Commissioner argues the ALJ justifiably relied upon the opinion of a vocational expert to find that although plaintiff could not perform his past work, he could perform other work in the unskilled sedentary labor market.

III. *Standard of Review*.

Under the applicable standard of review, the court examines the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Andrade v. Sec'y of Health & Human Servs*., 985 F.2d 1045, 1047 (10th Cir. 1993). *See also* 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It

requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations omitted). The determination of whether substantial evidence supports the ALJ's ruling is based upon the record as a whole, keeping in mind that evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).

    III. *Discussion*.

The ALJ's hearing decision includes an extensive discussion of plaintiff's RFC. Doc. 10-2, Tr. at 16-19. In the course of that discussion, the ALJ addressed in detail his findings with respect to plaintiff's complaints of pain and other symptoms that might impact his RFC. For example, with regard to plaintiff's back pain, the ALJ noted and cited evidence that plaintiff said he was still able to mow yards and that despite his pain, he informed a treating physician in April 2008 that he was doing well. The ALJ discussed the medical evidence in the record, including an examination noted as "unremarkable" in November 2007, and the doctor's accompanying note at that time that plaintiff's pain could be controlled with medication, which included ibuprofen and Tylenol. Tr. at 17 (citing Exhibit 14F-12). Although not specifically mentioned by the ALJ, that same doctor's report indicated that plaintiff did not appear to be in distress or in pain, although the doctor expressed frustration with plaintiff for not following dietary instructions. *Id*. (Note of Dr. Martinez dated 11/20/2007, at p.11).

The ALJ addressed plaintiff's diabetes and his testimony that about six months prior to the hearing he began to have numbness and decreased feeling in his hands and feet. The ALJ concluded that plaintiff's symptoms were not disabling, pointing out that his daily activities included driving a motor vehicle without assistance and shopping outside the home, as well as

5

cutting his own grass with a push mower and his aunt's lawn as well. Those findings were supported by testimonial evidence in the record. The ALJ cited medical evidence that plaintiff's diabetes was controlled with medication provided he was compliant with his medication and treatment regimen. The ALJ discussed plaintiff's complaint of blurred vision, noting that plaintiff testified it occurred only occasionally and that recent testing (May 2008) showed no obvious signs of diabetic retinopathy. These findings are supported by reports of medical treatment which are part of the record. Additionally, the ALJ noted evidence of daily activities by plaintiff that were arguably inconsistent with poor vision.

Other symptoms were addressed by the ALJ as part of his analysis. He recognized plaintiff's history of kidney stones (including surgery to remove them), but noted a May 2006 CT scan of the pelvis was basically normal and, although a calculus in the kidney was shown, there was no evidence of any obstruction. Likewise, he acknowledged plaintiff's documented high blood pressure, but observed this condition too was controlled with medication. Plaintiff is obese and suffers from sleep apnea, but the ALJ found plaintiff's sleep disorder has been treated with the use of a CPAP machine, and he said there was no medical evidence of disability from obesity. The record shows that in September 2007, plaintiff reported that he had no problems with the CPAP machine, and his doctor found that the machine was effective for his sleep apnea. Plaintiff testified that he has memory problems and difficulty with concentration. The ALJ concluded these symptoms were not disabling, citing evidence of daily activities by plaintiff such as shopping without assistance, performing housework, driving, and watching extended movies. Based on his consideration of all the evidence, the ALJ found that plaintiff's medically determinable impairments could be expected to cause the symptoms alleged, but that plaintiff's

6

statements about "the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent" with the RFC determined by the ALJ.

As the Commissioner points out in his brief, the record contains numerous additional medical reports that could be viewed as supporting the ALJ's credibility findings. In June 2007, for example, plaintiff told a doctor that his diabetes was asymptomatic, and an examination showed that he had 70 pounds of grip strength in his right hand and 40 in his left, normal reflexes and sensory function, and no evidence of neuropathy or retinopathy. A request by plaintiff for pain medication was denied in June 2007 and in July 2007 his physician expressed concern that plaintiff was not taking his medication. In April 2008 plaintiff told his doctor that he was doing well and was doing a lot of sheet rock work, though he complained "of a bit of back pain." In August 2008, plaintiff reported he was not taking some of his medication, but said it was not a problem, and his high blood pressure was controlled. *See* Doc. 22 at 3.

With regard to the particular limitations comprising the RFC, the ALJ discussed those limitations in a function-by-function assessment. Several of those limitations – including the ability to lift 5 pounds frequently and 10 pounds occasionally – were based on plaintiff's own testimony. At the same time, the ALJ found other testimony by plaintiff – including that he could stand only 5 to 10 minutes at a time and could only sit for a couple of hours – were not supported by medical evidence and were inconsistent with plaintiff's daily activities.

The evidence considered by the ALJ included an RFC assessment by a lay consultant for the state. Exh. 6F, Tr. 359-66. That assessment, which found limitations including frequently lifting 10 pounds, standing or walking about 6 hours in an 8-hour workday, and sitting (with normal breaks) for about 6 hours in an 8-hour workday, concluded that plaintiff was capable of

performing a full range of light work. That assessment, as the Commissioner notes, was affirmed upon review by a physician after a review of medical records. Exh. 10F, Tr. at 520. At the hearing before the ALJ, plaintiff's counsel asked the ALJ to give no weight to Exhibit 6F, as it was not completed by a medical source, and limited weight to Exhibit 10F, the RFC affirmed by a medical source, because of additional medical evidence in the record since that review was conducted.

In his decision, the ALJ considered all of plaintiff's impairments and conditions including plaintiff's obesity, noting that while it did not prevent plaintiff from working or being able to complete a full range of daily activities, in combination with his other impairments it did reduce his ability to lift, stand, walk and carry, and it limited his ability to do other activities such as climbing ladders, as a result of which the ALJ concluded that a reduction in plaintiff's capacity to do sedentary work was warranted. The ALJ reduced the limitations in the RFC determined by the consultant and affirmed by a physician in Exhibit 10F. The ALJ gave little weight to that determination, noting his own determination of the RFC "is more limiting and takes into consideration the medical evidence and the claimant's testimony of his exertional limitations." The ALJ discussed how the evidence, including medical evidence and evidence of plaintiff's daily activities, supported those limitations. The ALJ also considered all of plaintiff's other symptoms, and addressed with specific evidence each limitation and plaintiff's credibility regarding the severity and intensity of his symptoms. The RFC determined by the ALJ, according to the testimony of a vocational expert at the hearing, would not allow plaintiff to perform his past relevant work or the full range of sedentary work. Given plaintiff's RFC and his background and other characteristics, however, the expert's testimony supports the ALJ's

conclusion that plaintiff would be capable of doing certain unskilled sedentary jobs, including cutter-porter, order clerk/food and beverage, call-out operator, and administrative support worker. The ALJ listed and cited evidence supporting his conclusion that these jobs exist in significant numbers in the national economy.

The court fails to see how the ALJ's determination of the RFC can be characterized as lacking substantial evidence. The record shows the ALJ carefully considered all of the evidence in formulating the RFC, in accordance with his responsibility under the regulations. He sufficiently explained the determination in a way that allows for meaningful review. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (while an ALJ must consider all of the evidence in the record, nothing requires the discussion of every piece of evidence). Part of that responsibility was to determine plaintiff's credibility concerning the severity of his symptoms. The ALJ's assessment of credibility is ultimately a question of fact. The ALJ supported his credibility findings in this case with a thorough discussion of the evidence in the record. Those findings have an evidentiary basis that a reasonable mind could accept as sufficient to support his conclusions. The ALJ arrived at these conclusions through a proper process of considering all available evidence. *See e.g., Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir.1988) (credibility should be assessed in conjecture with other factors, such as the medical history of the claimant, medications, nonmedical evidence, other symptoms, and the testimony of any other witnesses); *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) (precedent "does not require a formalistic factor-by-factor recitation of the evidence ... [s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility."). He followed the "two step" process for evaluating a claimant's credibility concerning the severity of symptoms. *See*

*e.g., Anderson v. Astrue*, 2011 WL 124604, *6-8 (D. Kan., Jan. 14, 2011). In sum, the court finds that the ALJ's determination is supported by substantial evidence, that it comports with the regulations, and that he applied the correct legal standards.

IV. *Conclusion*.

The Commissioner's decision finding that plaintiff is not disabled within the meaning of the Social Security Act is hereby AFFIRMED. IT IS SO ORDERED this   28th   Day of March, 2011, at Wichita, Ks.

s/Wesley E. Brown
Wesley E. Brown
U.S. Senior District Judge